UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AFFILIATED FM INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>LTK CONSULTING SERVICES, INC.,<br><br>Defendant. | CASE NO. C06-1750JLR<br><br>ORDER |

## I. INTRODUCTION

Before the court are Defendant LTK Consulting Services, Inc.'s ("LTK"): (1) modified motion for an extension of time for pre-trial deadlines and to continue the trial date (Mot. to Cont. (Dkt. # 51) & Not. of Mod. (Dkt. # 61)); (2) motion to compel discovery and overrule objections to a subpoena (Mot. to Compel (Dkt. # 55)); and (3) motion for sanctions pursuant to Federal Rule of Civil Procedure 37 or to deem facts admitted (Rule 37 Mot. (Dkt. # 57)). As discussed below, the court GRANTS LTK's

ORDER- 1

modified motion for a continuance, GRANTS in part and DENIES in part LTK's motion to compel, and DENIES LTK's Rule 37 motion.

## II. BACKGROUND

This action arises out of a fire that occurred on May 31, 2004 and damaged the Blue and Red Trains of the Seattle Monorail System ("SMS") as the Blue Train was leaving the Seattle Center Station. (*See* Not. of Rem. (Dkt. # 1) at 7 (Compl. ¶¶ 1.1, 3.2).) Plaintiff Affiliated FM Insurance Company ("AFM") paid SMS $3,267,861.00 for damages resulting from the fire. (*Id.* ¶ 5.1.) AFM brings this action against LTK as the subrogee of SMS. (*Id.*) In its complaint, AFM alleges:

> In 2001, the City of Seattle contracted with . . . LTK . . . to refurbish the [SMS]. As part of this refurbishment, LTK . . . recommended that the grounding system for the Blue and Red Trains that made up the [SMS] be changed. This change to the grounding system for the Blue and Red Trains was completed in 2002.

(*Id.* ¶ 3.1.) AFM further alleges that "[t]he electrical ground fault responsible for causing the fire in the Blue Train on May 31, 2004 would have been avoided if the electrical grounding system for the Blue Train had not been changed at the direction of LTK . . . in 2002." (*Id.* ¶ 3.3.)

This case has been pending for a considerable length of time. AFM originally filed its complaint in King County Superior Court for the State of Washington on November 7, 2006. (Not. of Rem. at 5 (Compl.).) On December 7, 2006, LTK removed the action to federal district court. (*Id.* at 1-3.) On July 24, 2007, the court granted LTK's motion for summary judgment based on Washington State's economic loss doctrine. (*See* SJ Order (Dkt. # 21).) AFM appealed the court's order to the United

States Court of Appeals for the Ninth Circuit. (Not. of Appeal (Dkt. # 25).) In 2009, the Ninth Circuit decided to certify a question concerning Washington's economic loss doctrine to the Washington Supreme Court. (9th Cir. Op. (Dkt. # 33) at 2-3.)

On November 4, 2010, the Washington Supreme Court issued two new decisions reinterpreting its prior jurisprudence with regard to the economic loss doctrine, and announcing a new rule denominated the "independent duty doctrine." *See Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256 (Wash. 2010) & *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 243 P.3d 521 (Wash. 2010). On December 29, 2010, based on the Washington Supreme Court's opinions, the Ninth Circuit reversed this court's ruling on summary judgment and remanded for further proceedings. (9th Cir. Op. at 3; Mandate (Dkt. # 38).)

On January 11, 2011, the court issued a new scheduling order with respect to the remanded litigation. (Sched. Ord. (Dkt. # 40).) The court set a trial date of July 16, 2012 and a discovery cut-off date of March 19, 2012. (*See id.*) Counsel for LTK did not serve written discovery requests, including interrogatories, requests for admission, and requests for production of documents, to counsel for AFM until November 7, 2011. (Wahtola Decl. (Dkt. # 52) ¶ 17.) AFM responded to LTK's requests for admission on November 30, 2011. (*Id.* ¶ 20.) On December 5, 2011, AFM served its objections to LTK's requests for production of documents. (*Id.* ¶ 23.) On December 7, 2011, AFM responded to LTK's interrogatories. (*Id.* ¶ 24.)

On January 18, 2012, the parties asked for an extension of various pretrial deadlines. (Stip. Mot. (Dkt. # 46).) On January 23, 2012, the court granted this motion

in part by extending all of the dates requested by the parties except for the dispositive motions deadline of April 17, 2011. (1/23/12 Ord. (Dkt. # 49).) The court, however, extended the deadline for expert disclosures from January 18, 2012 to March 20, 2012, the deadline for amended pleadings from January 18, 2012 to April 3, 2012, the deadline for discovery motions from February 17, 2012 to April 3, 2012, and the deadline for completing discovery from March 19, 2012 to April 10, 2012. (*Id.* at 2-3.)

On February 2, 2012, AFM produced two computer disks containing certain records produced to AFM by SMS during the underlying insurance coverage lawsuit. (Wahtola Decl. ¶ 39.) On February 16-17, 2012, counsel for LTK reviewed twenty-one large boxes of documents, plus multiple sets of drawings and multiple disks of electronic data, also produced by AFM in response to LTK's document requests. (*Id.* ¶ 47.)

On March 30, 2012, LTK filed a motion seeking an additional six-month extension of the court's scheduling order and trial date. (*See generally* Mot. to Cont.) LTK's justification for this request is grounded in differences between the allegations contained within AFM's complaint and AFM's responses to LTK's discovery requests, which were served in late November and early December 2011. (*See id.* at 7-9.) As noted above, in its complaint, AFM alleged that LTK "negligently failed to exercise ordinary care in changing the electrical grounding system for the Blue and Red Trains of the Seattle Monorail System in 2001 and 2002." (Not. of Rem. at 9 (Compl. ¶ 4.2).) However, in its November 30, 2011 responses to requests for admission, AFM stated that "[d]iscovery to date has uncovered that, in fact, the City of Seattle contracted with defendant to refurbish the Seattle Monorail System first in 1990 and 1997," and that

"[w]hen defendant contracted with the City of Seattle in 1990 and 1997, the Grounding System for the Blue Train was a floating ground system." (Wahtola Decl. ¶ 22, Exs. 1-3.)

Further, in its December 7, 2011 responses to interrogatories, AFM stated:

> . . . The City of Seattle contracted with LTK in 1997 to provide engineering services related to the replacement of the GE traction motor control units of the two trains. During this project LTK approved the modification of the train grounding scheme from a "floating body" design to a "body ground to negative rail" design. In 2000, the City of Seattle contracted with LTK to survey the condition of the wiring through the Blue and Red Trains. During this survey completed in 2001, LTK documented the 1997 change in the grounding system without acknowledging LTK's approval of the 1997 design change.
>
> \*\*\*\*\*\*\*\*\*\*\*
>
> . . . The change to the grounding system made in 1997/1998 represented a fundamental change in the grounding system that affected its function, maintenance and operating procedures, and safety for both staff and passengers.
>
> \*\*\*\*\*\*\*\*\*\*\*
>
> . . . When LTK modified the Monorail grounding system by bonding the metal train car bodies to the negative power rail, this resulted in the metal car bodies having the same voltage potential relative to the Monorail station as the negative rail. This exposed Monorail passengers and staff to the same uncontrolled voltage potentials of the negative power rail that King County Metro considers hazardous and possibly fatal.
>
> All of this information was made available to LTK during the Auxiliary Electrical and Grounding System Refurbishment Project in 2001/2002. LTK disregarded all of this information. . . .

(*Id.* Ex. 5 at 2-4.) In its motion to continue the case schedule and trial date, LTK asserts that AFM's discovery responses represent a substantive change to the allegations in AFM's complaint. (Mot. to Cont. at 2.)

LTK asserts that its defense in this matter has focused on disproving the assertion that it recommended changing a "floating" grounding system to a "grounded" grounding system as part of the services it rendered to SMS in 2001 because SMS Trains were already grounded or bonded to the car bodies by 2001. (Mot. to Cont. at 2, 6.) LTK asserts that because it did not learn of AFM's altered position until late November and early December 2011, it requires a six-month extension to properly prepare a new defense. (*Id.* at 2.) Alternatively, LTK seeks an order barring AFM from amending its complaint or presenting evidence at trial consistent with the statements in AFM's discovery responses quoted above. (*Id.*)

AFM never filed a response to LTK's motion to continue the case schedule. (*See generally* Dkt.) Nevertheless, on April 13, 2012, LTK filed a document entitled "Notice of Withdrawal and Modification of Requested Relief." (*See generally* Not. of Mod.) In this Notice, LTK withdraws its request for an extension of the pre-trial deadlines and a continuance of the trial date, and instead seeks only an extension of the deadline for serving LTK's Federal Rule of Civil Procedure 26(a)(2) expert disclosures upon AFM. (*Id.* at 1.) LTK served its Rule 26(a)(2) expert disclosures upon AFM on April 10, 2012. (Wahtola Decl. ¶ 9.) The deadline for serving expert disclosures was March 30, 2012. (01/23/12 Ord. at 2.)

In addition, LTK's counsel suggests in his declaration filed in conjunction with LTK's Notice that the court should require AFM to file a motion seeking leave to amend its complaint, although the deadline for doing so lapsed on April 3, 2012. (2nd Wahtola Decl. (Dkt. # 61-1) ¶¶ 14-15.) LTK's counsel asserts that LTK would respond by

objecting to any such amendment on grounds that the necessary additional discovery and related costs would be prejudicial to LTK, it may no longer be possible to obtain the required evidence, and any amendment would be futile as the new claims would be barred by the statute of limitations. (*Id.*) LTK's counsel asserts that should AFM overcome these objections, then LTK would again seek a six-month revision to the case schedule and trial date. (*Id.* ¶ 16.)

On April 3, 2012, LTK filed a second motion. In this motion, LTK seeks to compel the production of certain discovery from AFM. (*See* Mot. to Compel.) LTK seeks an order requiring AFM to produce additional documents that LTK believes are missing from AFM's prior production. (*Id.* at 2-7.) LTK also seeks an order requiring AFM to provide narrative responses to AFM's requests for production. (*Id.* at 7-9.) Finally, AFM seeks to compel a response to a subpoena that LTK issued to one of AFM's expert witnesses, who testified in the underlying insurance coverage litigation between AFM and SMS, and who is designated to testify in this trial, as well. (*Id.* at 9-12.)

On April 5, 2012, LTK filed a third motion. In this motion, LTK seeks an order imposing Federal Rule of Civil Procedure 37 sanctions on AFM based on AFM's responses to LTK's requests for admission. (*See* Rule 37 Mot.) LTK proponed a series of requests for admission to AFM that asked AFM to "[a]dmit that at the time when the City contracted with LTK to refurbish the Seattle Monorail System as alleged in Paragraph 3.1 of the Complaint, the Grounding System for the Blue train [(1)] was not a floating grounding system," (2) "was a grounded grounding system," and (3) "was

grounded to the car body of the Blue Train." (Wahtola Decl. Ex. 3 at 2-3 (RFAs No. 1-3).) With respect to each request for admission, AFM responded:

> Plaintiff's complaint at paragraph 3.1 states that the City of Seattle contracted with defendant in 2001 to refurbish the Seattle Monorail System. Discovery to date has uncovered that, in fact, the City of Seattle contracted with defendant to refurbish the Seattle Monorail System first in 1990, and then in 1997. When defendant contracted with the City of Seattle in 1990 and 1997, the Grounding System for the Blue Train was a floating grounding system. Consequently, plaintiff denies this request.

(*Id.*) LTK asserts that AFM should have admitted each of the forgoing requests because, despite AFM's narrative explanation, in 2001 the grounding system for the Blue Train was not floating and was grounded to the body of the Blue Train. (Rule 37 Mot. at 4.) As a result, LTK asserts that it should be able to recover its defense costs incurred in demonstrating that in 2001 the grounding system was not floating but rather was grounded. (*Id.* at 6-9.) Alternatively, LTK asks that the court deem its requests for admission to be admitted by AFM despite AFM's denial. (*Id.* at 10-11.)

The court addresses each of LTK's motions below.

### III. ANALYSIS

**A. LTK's Motion to Continue the Case Schedule and Trial Date**

As noted above, LTK initially moved for a six-month extension of the case schedule, but then withdrew its request except for an extension of the deadline for serving Federal Rule of Civil Procedure 26(a)(2) expert disclosures from March 30, 2012 to April 10, 2012. (Not. of Mod. at 1.) AFM never filed a response to LTK's motion, and under the court's local rules, "[i]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." *See*

Local Rules W.D. Wash. CR 7(b)(2). Because AFM has failed to respond or to demonstrate any prejudice as a result of LTK's late disclosure of its expert witnesses, the court grants LTK's request to extend the deadline for expert witness disclosures from March 30, 2012 to April 10, 2012. Accordingly, LTK's expert witness disclosure on April 10, 2012 would now be considered timely.

The court will also briefly address the suggestion in LTK's counsel's declaration that the court should require AFM to file a motion to amend its complaint to conform its allegations to its discovery responses. (*See* 2nd Wahtola Decl. ¶¶ 14-16.) Prior to the era of notice pleading, "pleading requirements were strict and variances of proof were not generally tolerated." *See Health Care & Retirement Corp. of Am. v. St. Paul Fire & Marine Ins. Co.,* 621 F. Supp. 155, 162 (S.D. W. Va. 1985). A complaint under modern rules, however, is required only to put the defendant on notice of a claim showing that the pleader is entitled to relief. *See id.* (citing Fed. R. Civ. P. 8). Indeed, under notice pleading, a fact alleged in a complaint "may be a poor measure of what is to follow." *See id.* Further, amendments to pleadings to conform the allegations with the evidence are made with ease, absent prejudice to the opposing party. *See id.* Even when a party objects at trial or after trial that evidence is not within the issues raised by the pleadings, "the court may permit the pleadings to be amended." Fed. R. Civ. P. 15(b)(1). Further, "[t]he court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." *Id.*

Here, the issue of variance does not run to the substance of AFM's claims, but rather to the timing. AFM now asserts in its discovery responses that the change to the grounding system occurred in the 1997/1998 time period rather than the 2001/2002 time period as alleged in its complaint. (*See* Wahtola Decl. Ex. 5 at 2-3.) Even prior to the era of notice pleading, discrepancies in dates or timing were not considered fatal variances in the pleadings. *See, e.g.*, *United States v. Le Baron*, 71 U.S. 642, 648 (1866) (stating that allegations of time need not be proven with precision, but that a very large departure therefrom is allowable); *Hollweg v. Schaffer Brokerage Co.*, 197 F. 689, 694-95 (6th Cir. 1912) (holding that in an action for breach of employment contract alleged to have been made in February and modified in October, there was no fatal variance, although the proof was of a contract made in April and modified in November).

In any event, LTK did not serve written discovery requests upon AFM until November 2011. (Pierson Decl. (Dkt. # 66) ¶ 4.) In response to those requests, AFM informed LTK by late November or early December 2011 of the variance in dates between AFM's discovery responses and the allegations in its pleadings. (*See* Wahtola Decl. Exs. 3, 5.) Thus, LTK knew of the variance more than four months prior to the April 10, 2012 discovery cut-off, and more than seven months prior to the July 9, 2012 trial date. LTK has not adequately explained why it delayed so long into the discovery period to serve its initial written discovery requests, or why if additional discovery was

necessary following receipt of AFM's responses, such discovery could not have been accomplished within the remaining several months of the discovery period.[1]

Finally, other than issuing a scheduling order, it is not the court's typical modus operandi to instruct the parties regarding what motions they should bring or how they should otherwise conduct the litigation of their claims or defenses. AFM will reap the benefits or bear the consequences of its own decisions regarding the litigation of its claims. The same is true with respect to LTK. For example, LTK's counsel has indicated that in response to a motion to amend by AFM, LTK would assert that any amendment is futile because the statute of limitations has run with respect to claims that arose in the 1997/1998 time period. (*See* 2nd Wahtola Decl. ¶ 15.) There is no reason, however, why LTK need raise this argument only in response to a possible motion to amend. LTK could have raised this issue in a motion for summary judgment. Although the dispositive motions deadline has passed, LTK still could raise this issue at trial or in a motion for a directed verdict. The court, however, leaves such decisions to the parties.

**B. LTK's Motion to Compel the Production of Additional Documents**

In response to LTK's document requests, AFM's current counsel contacted AFM's counsel in the underlying insurance coverage action between AFM and SMS and asked AFM's former counsel to produce all documents that SMS had produced to AFM

---

[1] Counsel for LTK indicates in his March 30, 2012 declaration that part of the reason that he was unable to promptly conduct additional discovery for a period of time was due to the hospitalization of his infant son in January 2012. (Wahtola Decl. ¶38.) The court notes, however, that it granted an extension of the case schedule on January 23, 2012, which should have relieved any time pressures incurred as a result of this incident. (*See* 1/23/12 Ord.)

in the underlying litigation. (Pierson Decl. ¶ 7.) Those documents were produced to LTK on February 2, 2012. (*Id.*) LTK has noted that certain bates stamped numbers, SMS 7779-11806 and SMS 12293-12423, are missing from this production, and has demanded the production of these documents.[2] AFM's counsel in the underlying coverage action has rechecked her file and confirmed that her firm no longer possesses these documents. (*Id.* ¶ 9; Wang Decl. (Dkt. # 70) ¶ 5.) Further, she testified that she could find no indication that she or her firm "had ever received any documents from SMS bates labeled SMS 7779-11806 and SMS 12293-12423." (Wang Decl. ¶ 5.) Yet, Ms. Wang's declaration also states that after reviewing her firm's files a second time, she was in fact able to locate additional documents bates labeled SMS 12995-12999 (*id.*), and these documents now apparently have been produced in conjunction with this motion (*see* Pierson Decl. Ex. B). Her declaration, however, does not explain why these documents were not located initially or how Ms. Wang came upon them during second search. (*See generally* Wang Decl.)

In addition, LTK has produced evidence that counsel for AFM referred to documents within the missing number series in the course of at least one deposition of an SMS representative during the underlying coverage litigation.[3] (3rd Wahtola Decl. (Dkt. # 76) ¶¶ 11-14; *see also* Wahtola Decl. Ex. 12.) Thus, there is substantial evidence that at

---

[2] In addition, LTK has demanded the production of AFM's requests for production that AFM propounded on SMS in the underlying coverage litigation. (*See* Mot. to Compel at 7.)

[3] LTK has demanded production of the exhibits entered by AFM's counsel during depositions of SMS's representatives in the underlying insurance coverage litigation. (*See* Mot. to Compel at 7.)

least some of the documents in the missing bates label ranges were at one time in the possession of AFM's insurance coverage litigation counsel.

As part of the settlement of the coverage litigation, AFM became subrogated to any claims that SMS might have against LTK. Thus, counsel for AFM would or should have known that further litigation between AFM and LTK was a distinct possibility and that the documents produced by SMS in the coverage action would be relevant to that future litigation. The fact that a significant number of these documents are missing raises the specter of spoilation, particularly in light of the possibility that these documents may have a direct bearing on LTK's possible statute of limitations defense.[4] (*See* 3rd Wahtola Decl. ¶¶ 15-17.) Accordingly, the court will grant this portion of LTK's motion and order AFM to produce the missing bates labeled documents or provide a more thorough accounting of their disposition, why they were not more carefully preserved, and why they cannot now be produced.[5]

In addition to the foregoing documents, counsel for AFM worked with AFM's experts and the management of SMS to identify and gather documents in SMS's offices

---

[4] "Spoilation is the 'destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *May v. F/V Lorena Marie, Official No. 939683*, No. 3:09–cv–00114–SLG–JDR, 2012 WL 395286, at *2 (D. Alaska Feb. 7, 2012) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) and *Black's Law Dictionary*, 1401 (6th Ed. 1990)). The court may impose sanctions for spoilation based both on its inherent power and the civil rules. *See Leon v. IDX Syss. Corp.*, 464 F.3d 951, 955 (9th Cir. 2006); *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001); Fed. R. Civ. P. 37(c).

[5] This ruling includes the requests for production propounded by AFM to SMS in the underlying insurance coverage litigation, as well as the documents entered as exhibits by AFM's counsel in depositions of SMS's representatives in the underlying coverage litigation. (*See* Mot. to Compel at 7.)

responsive to LTK's document requests. (*Id.* ¶¶ 10-12.) The group identified and copied 21 boxes of documents, which were then shipped to the offices of AFM's experts. (*Id.* ¶ 12.) Counsel for LTK reviewed these documents on February 16-17, 2012. (*Id.* ¶ 13.) LTK believes that certain categories of responsive documents are not contained within this production, and now asks the court to require AFM to provide written responses to LTK's requests for production. (*See* Mot. to Compel at 6-7.)

The Federal Rules of Civil Procedure do not necessarily require a written response to a request for production. Rather, the Rules provide that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). Based on the description of the parties, representatives of SMS and AFM's experts combed through SMS's documents and selected and copied those documents that they believed were responsive to LTK's document requests – as those requests were narrowed by the parties' agreement prior to production. (*See* Pierson Decl. ¶¶ 6, 10-12, Ex. A; Lewis Decl. (Dkt. # 67); Way Decl. (Dkt. # 68); Henniksen Decl. (Dkt. # 71).) The court, therefore, finds that because the documents were not produced "as they [we]re kept in the usual course of business," it is incumbent upon AFM to "organize and label [the documents] to correspond to the categories in the request." *See* Fed. R. Civ. P. 34(b)(2)(E)(i). Accordingly, the court grants in part this aspect of LTK's motion, and orders AFM to "organize and label" the documents it produced "to correspond to the categories in the request." *See id.*

Finally, LTK also served a Federal Rule of Civil Procedure 45 subpoena to Shapiro Rail Consulting, Inc. ("Shapiro"), which has been identified as an expert witness for AFM in this litigation and which also served as an expert witness for AFM in the underlying coverage litigation. LTK served a subpoena on Shapiro seeking its entire file. (Resp. to Mot. to Compel (Dkt. # 65) at 7.) AFM objected to the subpoena on behalf of Shapiro. LTK seeks an order from the court compelling Shapiro to respond to LTK's subpoena.

The Federal Rules of Civil Procedure provide guidance pertaining to this issue. Rule 26(b)(4)(C) provides that communications between a party's attorney and a designated expert witness are protected under Rules 26(b)(3)(A) and (B), except to the extent that communications "(i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii). Accordingly, the court grants LTK's motion to compel but only with regard to documents that are discoverable under Rule 26(b)(4)(C)(i)-(iii).

**C. LTK's Motion for Rule 37 Sanctions Regarding AFM's Response to LTK's Requests for Admission**

LTK asserts that AFM wrongfully failed to admit its Requests for Admission Nos. 1-3, as described above, and therefore is entitled either to an award of its attorneys' fees and costs in proving the truth of what should have been admitted, *see* Fed. R. Civ. P.

37(c)(2), or to an order deeming the requests to be admitted, *see* Fed. R. Civ. P. 36(a)(6). Federal Rule of Civil Procedure 36(a) allows a party to serve a written request seeking to have another party admit the truth of any matters relevant to the party's claim or defense. *See* Fed. R. Civ. P. 36(a). Rule 36(a) is designed to "expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981). The response to a request for admission must consist of one of the following: an admission, a denial, or a statement explaining why a party is unable to admit or deny the request. Fed. R. Civ. P. 36(a)(4). "[W]hen good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder." *Id*.

First, the court construes AFM's responses as denials to LTK's requests for admission. Although AFM provided an additional narrative response, AFM clearly denied all of the requests for admission at issue here. (Wahtola Decl. Ex. 3 at 2-3 (RFAs No. 1-3) (stating, "[c]onsequently, plaintiff denies this request").) Accordingly, the court declines to deem the requests to be admitted.

Second, the court declines to rule on LTK's motion for attorneys' fees and costs because it is premature. LTK seeks sanctions pursuant to Federal Rule of Civil Procedure 37(c)(2), which states:

> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:

ORDER- 16

(A) the request was held objectionable under Rule 36(a);

(B) the admission sought was of no substantial importance;

(C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or

(D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2). Pursuant to the Advisory Committee Notes: ". . . Rule 37(c) is intended to provide posttrial relief in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial." *See* Fed. R. Civ. P. 37 (Advisory Committee Notes (1970 Amendment)); *see also* Wright, Miller & Marcus, Federal Practice and Procedure Civil 2d § 2290 ("If a party has failed to admit a matter when requested to do so under Rule 36, and the requesting party thereafter proves the truth of the matter, the requesting party may move after trial for an order that the party refusing to admit pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees."); *Keithley v. The Home Store.com, Inc.*, No. C-03-04447 SI (EDL), 2008 WL 2024977 at *2 (N.D. Cal. May 8, 2008) (quoting 7 James Wm. Moore, et al., Moore's Federal Practice ¶ 37.75 (3d ed. 1997) ("However, the rule which provides for such sanctions is intended to provide post-trial relief and in the vast majority of circumstances, it would be inappropriate for counsel to seek expense shifting sanctions prior to completion of trial. As a practical matter, it generally is necessary to complete a proceeding before a court would be able to conclude that the moving party had proven the truth of the matter for which an admission

was requested, because a court must consider all rebuttal evidence before it may determine what has been proven.")).

Moreover, the court cannot conclusively determine at this stage of the litigation whether any of the admissions fall within an exception to the otherwise mandatory fee award, such as whether the admission sought was of no substantial importance. *See Keithley*, 2008 WL 2024977, at *3 (citing Fed. R. Civ. P. 37(c)(2)(B)). In *Read-Rite Corp. v. Burlington Air Express, Ltd.*, 183 F.R.D. 545 (N.D. Cal. 1998), for example, the court denied expenses under Rule 37(c)(2) in part because certain requests for admission were not of substantial importance to the litigation in light of the district court's ruling on summary judgment. *See id.* at 547 ("Since these requests [for admission] were based on the 'entire shipment' theory of liability and Judge Wilken found that that theory did not apply, these requested admissions were not substantially important to the litigation."). There may be many turns in the road before this litigation has come to an end. Accordingly, the court denies LTK's motion as premature, but without prejudice to raising it again after trial or other disposition of this matter.

### D. CONCLUSION

Based on the foregoing, the court (1) GRANTS LTK's modified motion to continue (Dkt. # 51) by extending the expert witness disclosure deadline from March 30, 2012 to April 10, 2012; (2) GRANTS IN PART and DENIES IN PART LTK's motion to compel (Dkt. # 55) as described in detail above; and (3) DENIES as premature LTK's motion for Federal Rule of Civil Procedure 37 sanctions or to deem requests for

admission as admitted (Dkt. # 57), but without prejudice to raising the issue again after trial or other disposition of this matter if appropriate at that time.

Dated this 1st day of May, 2012.

*[signature]*

JAMES L. ROBART
United States District Judge