1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

AFFILIATED FM INSURANCE CO.,

CASE NO. C06-1750JLR

11

Plaintiff,

ORDER DENYING PLAINTIFF'S
MOTION FOR RECUSAL

12

v.

13

LTK CONSULTING SERVICES,
INC.,

14

Defendant.

15

## I.   INTRODUCTION

16

17

Before the court is Plaintiff Affiliated FM Insurance Company's ("AFM") motion

for recusal.  (Mot. (Dkt. # 140).)  Having reviewed AFM's motion, the declaration filed

18

19

in support of the motion (Scanlon Decl. (Dkt. # 142)), the balance of the record, and the

applicable law, the court declines to voluntarily recuse itself and therefore DENIES

20

21

AFM's motion.

//

22

ORDER- 1

1

## II.     BACKGROUND

2      This action arises out of a fire that occurred on May 31, 2004, and damaged the

3   Blue and Red Trains of the Seattle Monorail System ("SMS").  AFM originally filed its

4   complaint against Defendant LTK Consulting Services, Inc. ("LTK"), as a subrogee of

5   SMS, in King County Superior Court for the State of Washington on November 7, 2006.

6   (Compl. (Dkt. # 1) at 5.)  On December 7, 2006, LTK removed the action to federal

7   district court.  (*See id.* at 1-3.)

8      In a prior order, the court summarized AFM's negligence claim as follows:

9       In their complaint, AFM alleges that "[t]he electrical ground fault
       responsible for causing the fire in the Blue Train on May 30, 2004 would
10      have been avoided if the electrical grounding system for the Blue Train had
       not been changed at the direction of LTK Engineering in 2002," and "LTK
11      . . . negligently failed to exercise ordinary care in changing the electrical
       grounding system for the Blue and Red Trains . . . in 2001 and 2002."
12      (Compl. [(Dkt. # 1)] ¶¶ 3.3, 4.2.) However, in its November 30, 2011
       responses to LTK's requests for admission, AFM stated that "[d]iscovery to
13      date has uncovered that, in fact, the City of Seattle contracted with
       defendant to refurbish the Seattle Monorail System first in 1990 and 1997,"
14      and that "[w]hen defendant contracted with the City of Seattle in 1990 and
       1997, the Grounding System for the Blue Train was a floating ground
15      system." (3/30/12 Wahtola Decl. (Dkt. # 52) ¶ 22 & Ex. 3.) AFM provided
       similar answers on December 7, 2011 in response to LTK's interrogatories
16      indicating that during 1997 "LTK approved the modification of the train
       grounding scheme from a 'floating body' design to a 'body ground to
17      negative rail' design," and this change "represented a fundamental change
       in the grounding system that affected its function, maintenance and
18      operating procedures, and safety for both staff and passengers." (*Id*. Ex. 5 at
       2-4.)

19
       AFM's expert reports apparently build on the theory of liability
20      outlined in AFM's November and December 2011 discovery responses.
       AFM's expert reports suggest that LTK was negligent because (1) LTK
21      allegedly changed a "floating" grounding system on the SMS to a
       "grounded" grounding system in 1997 or 1998, and (2) LTK allegedly

22

ORDER- 2

1   failed to change the "grounded" grounding system back to a "floating"
    grounding system in 2001.  (AFM Expert Discl. Ex. 2.)

2

3   (5/25/12 Order (Dkt. # 96) at 4-5.)  AFM has acknowledged the forgoing description to

4   be an "apt[] summar[y]" of its negligence claim.  (*See* Mot. at 3.)  Thus, according to

5   AFM and its expert witnesses, there are two aspects to AFM's negligence claim—(1)

6   LTK's alleged change of the grounding system from floating to grounded in 1997 or

7   1998 and (2) LTK's alleged failure to change the grounded system back to a floating

8   system in 2001.[1]

9   On June 14, 2012, the court dismissed AFM's negligence claim on summary

10  judgment based on the statute of limitations found in RCW 4.16.080.[2]  (SJ Ord. II (Dkt.

11  # 102).)  This court found that all aspects of AFM's negligence claim were barred by the

12  statute of limitations.  (*See generally* SJ Ord. II (Dkt. # 102).)  AFM appealed the court's

13

14      [1] In its present motion for recusal, AFM again acknowledges these "two facets to [its]
    negligence claim against defendant."  (*See* Mot. at 7-8 ("First, plaintiff's experts have opined
    that defendant was negligent in changing the grounding system for the Monorail in 1998 from a
15  floating system to a bonded system. Second, plaintiff's experts have opined defendant was
    negligent in the 2001/2002 time frame in refusing to change the grounding system back to the
16  original floating system from the bonded system.").)

17      [2] Earlier in the litigation, on July 24, 2007, the court granted LTK's first motion for
    summary judgment based on Washington State's economic loss doctrine.  (*See* SJ Ord. I (Dkt. #
    21).)  AFM appealed the court's order to the Ninth Circuit Court of Appeals.  (Not. of App. I
18  (Dkt. # 25).)  In 2009, the Ninth Circuit decided to certify a question concerning Washington's
    economic loss doctrine to the Washington Supreme Court.  (9th Cir. Op. I (Dkt. # 33) at 2-3.)
19  On November 4, 2010, the Washington Supreme Court issued two new decisions reinterpreting
    its prior jurisprudence with regard to the economic loss doctrine, and announcing a new rule
20  denominated the "independent duty doctrine."  *See Eastwood v. Horse Harbor Found., Inc.*, 241
    P.3d 1256 (Wash. 2010); *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 243 P.3d 521
21  (Wash. 2010).  On December 29, 2010, based on the Washington Supreme Court's opinions, the
    Ninth Circuit reversed this court's ruling on summary judgment and remanded for further
    proceedings.  (9th Cir. Op. I at 3; Mandate (Dkt. # 38).)
22

1   order to the Ninth Circuit.  (Not. of App. II (Dkt. # 104).)  On May 22, 2013, the Ninth

2   Circuit reversed the court's dismissal based on the statute of limitations and remanded the

3   case.  Specifically, the Ninth Circuit stated:

> To the extent Plaintiff claims that the fire was caused by LTK's alleged
> negligence in changing from a floating to a bonded grounding system in
> 1998, the district court correctly concluded that Plaintiff's claim is time-
> barred.   But Plaintiff's theory, at least in part, is that the negligence
> occurred in the design and installation of the terminal board in 2001 and
> 2002, and that the redesigned terminal board was the proximate cause of
> the fire that is the subject of the suit.  Therefore, Plaintiff argues the statute
> of limitations did not commence until the fire occurred in 2004. Because
> the suit was filed in 2006, Plaintiff contends that the suit was timely filed.
>
> Defendant argues that the design issues predated the installation of the
> terminal board and that a series of electrical incidents, including at least one
> that post-dated the terminal board installation, were sufficient actual injury
> to trigger the running of the limitations period.  There are genuine issues of
> material fact as to whether the monorail sustained "actual and appreciable"
> harm after the terminal board was installed. . . . Given the disputed facts,
> and drawing the inferences in favor of the plaintiff, we conclude that
> genuine issues of material fact exist precluding summary judgment.

(9th Cir. Op. II (Dkt. 137) at 3-4.)

Following remand and the Ninth Circuit's issuance of its mandate, the court issued

an order on June 20, 2013, directing the parties to file a joint status report concerning

when the matter would be ready for trial and also directing the parties to address whether

there were any remaining legal issues that the court should address or remaining discovery

that the parties should conduct prior to trial.  (6/20/13 Order (Dkt. # 139) at 2.)  In the

course of its order, the court summarized the Ninth Circuit's ruling as follows:

> The court directs the parties to file a joint status report indicating when this
> matter will be ready for trial on Plaintiff's remaining claim concerning the
> alleged "negligence [that] occurred in the design and installation of the
> terminal board in 2001 and 2002, and [whether] the redesign and

ORDER- 4

1   installation of the terminal board was the proximate cause of the fire that is
   the subject of the suit." (*See* 9th Cir. Mem. (Dkt. # 137) at 3.)  Pursuant to
2   the Ninth Circuit's ruling, factual issues regarding whether this claim is
   time-barred remain for trial. (*Id.* ("There are genuine issues of material fact
3   as to whether the monorail sustained 'actual and appreciable' harm after the
   terminal board was installed.").  However, also pursuant to the Ninth
4   Circuit's ruling, any claim that the fire was caused by Defendant LTK
   Consulting Services, Inc.'s alleged negligence in changing the Seattle
5   Monorail System from a floating to a bonded grounding system is time-
   barred.  (*Id.*)

6

(*Id.* at 1-2.)

7

8   On June 24, 2013, AFM filed its present motion for recusal pursuant to 28 U.S.C.

9 § 144 and 28 U.S.C. § 455.  (*See generally* Mot.)  AFM asserts that its motion is based on

10 the court's May 1, 2012, order addressing certain discovery issues (Dkt. # 82), its May

11 25, 2012, order denying LTK's motion to strike AFM's expert witness disclosures and

12 granting AFM's motion to compel (Dkt. # 96), its June 14, 2012, order granting LTK's

13 motion for summary judgment with respect to the statute of limitations (Dkt. # 102), and

14 its June 20, 2013, order requesting a joint status report (Dkt. # 139), along with the May

15 22, 2013 memorandum decision of the Ninth Circuit (Dkt. # 137).  (Mot. at 1-2.)  AFM's

16 primary concern, however, is the court's statement in its June 20, 2013, order that "any

17 claim that the fire was caused by Defendant LTK Consulting Services, Inc.'s alleged

18 negligence in changing the Seattle Monorail System from a floating to a bonded

19 grounding system is time-barred."  (*See* Mot. at 8.)  AFM asserts that, because the court

20 failed to indicate that this alleged negligence occurred in 1998, this statement "displays

21 such a deep-seated antagonism towards [AFM] and [AFM's] claims in this lawsuit as to

22 render fair judgment by this [c]ourt impossible in this case."  (*Id.*)

ORDER- 5

1         **III.    ANALYSIS**

2         "The substantive standard for recusal under 28 U.S.C. § 144 and 28 U.S.C. § 455

3    is the same:  Whether a reasonable person with knowledge of all the facts would

4    conclude that the judge's impartiality might reasonably be questioned."  *United States v.*

5    *McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) (quoting *United States v. Hernandez*, 109

6    F.3d 1450, 1453 (9th Cir. 1997) (per curiam) (brackets and internal quotation marks

7    omitted)).  "Ordinarily, the alleged bias must stem from an 'extrajudicial source.'"

8    *United States v. Hernandez*, 109 F.3d 1450, 1454 (9th Cir. 1997) (quoting *Liteky v.*

9    *Untied States*, 510 U.S. 540, 554-56 (1994)).  "[J]udicial rulings alone almost never

10   constitute valid basis for a bias or partiality motion."  *Hernandez*, 109 F.3d at 1454.

11   Moreover, "[p]arties cannot attack a judge's impartiality on the basis of information and

12   beliefs acquired while acting in his or her judicial capacity."  *McTiernan*, 695 F.3d at 891

13   (quoting *United States v. Frias-Ramirez*, 670 F.2d 849, 853 n.6 (9th Cir. 1982)).

14   "[O]pinions formed by the judge on the basis of facts introduced or events occurring in

15   the course of the current proceedings, or of prior proceedings, do not constitute a basis

16   for a bias or partiality motion unless they display a deep-seated favoritism or antagonism

17   that would make fair judgment impossible."  *Liteky*, 510 U.S. at 555.

18         AFM has not demonstrated or even suggested any "extrajudicial source" for the

19   court's alleged bias.  Nor does AFM demonstrate any deep-seated favoritism or

20   antagonism on the part of the court toward the parties that would make fair judgment

21   impossible.  AFM states that it bases its motion on four of the court's prior orders.

22   However, the outcomes in these orders are mixed with court ruling in both AFM's and

ORDER- 6

1 | LTK's favor depending on the law and facts presented by the parties.[3]  Based on this

2 | record, AFM does not approach demonstrating the type of "deep-seated favoritism or

3 | antagonism that would make fair judgment impossible" by this court.  *See Liteky*, 510

4 | U.S. at 555.

5 |      Neither does the fact that the Ninth Circuit has entered orders reversing and

6 | remanding this action demonstrate that this court harbors deep-seated favoritism or

7 | antagonism toward any of the parties.[4]  "Adverse rulings do not constitute the requisite

8 | bias [to necessitate recusal] . . . even if they were erroneous."  *United States v. Nelson*,

9 | 718 F.2d 315, 321 (9th Cir. 1983) (citations omitted) (Judge's error in hasty acceptance

10 | of an invalid guilty verdict in the first trial or even his announcement in open court of his

11 | own belief in the defendant's guilt did not require recusal).  The court recognizes that

12 | fair-minded judges can differ with respect to outcomes, and that the review and

13 |

14 |     [3] The court entered one of the orders at issue entirely in AFM's favor.  (*See* 5/25/12

15 | Order (Dkt. # 96) (denying LTK's motion to strike AFM's expert witness disclosures and granting AFM's motion to compel).  The court entered another of the orders in favor of LTK in

16 | part and in favor of AFM in part.  (*See* 5/1/12 Order (Dkt. # 82) (granting LTK's motion for an extension of time, granting in part and denying in part LTK's motion to compel discovery and overrule AFM's objection to a subpoena, and denying LTK's motion for Rule 37 sanctions

17 | against AFM or to deem facts admitted).)  The only order cited by AFM that the court entered entirely against AFM was the court's order granting LTK's motion for summary judgment with

18 | respect to the statute of limitations.  (*See* 6/14/12 Order (Dkt. # 102).)

19 |     [4] As noted above, one of the Ninth Circuit's reversals came in the context of the Washington Supreme Court's reinterpretation of its prior jurisprudence with regard to the

20 | economic loss doctrine and the announcement of a new rule denominated as the "independent duty doctrine."  (*See supra* note 1.)  In the second reversal, the Ninth Circuit agreed in part with

21 | this court's assessment of the case and disagreed in part.  (*See* 9th Cir. Op. II at 3 ("To the extent Plaintiff claims that the fire was caused by LTK's alleged negligence in changing from a floating

22 | to a bonded grounding system in 1998, the district court correctly concluded that Plaintiff's claim is time-barred.").)

1  occasional reversal and remand of its decisions by the Ninth Circuit is part of our court

2  system and judicial process.  There is nothing in this court's record or the record of this

3  case to suggest otherwise, and AFM has not presented any evidence so indicating.

4        Finally, AFM relies most heavily upon the court's June 20, 2013, order directing

5  the parties to submit a joint status report.  (*See* Mot. at 8-11.)  AFM finds bias in the

6  court's failure to note that AFM's time-barred claim concerning LTK's alleged

7  negligence in changing the SMS from a floating to a grounded system occurred in 1998.

8  (*See* Mot. at 5-6.)  The fact, however, that AFM asserts that this alleged act occurred

9  roughly in 1998 is firmly established not only in this court's prior orders, but in the Ninth

10  Circuit's memorandum decision as well.  (*See, e.g.*, 5/25/12 Order at 4-5; 9th Cir. Op. II

11  at 3-4.)  There was no need for the court to repeat this fact in the context of its order

12  directing the parties to submit a joint status report, nor does its failure to do so

13  demonstrate any "deep-seated favoritism or antagonism" toward either LTK or AFM.

14        Moreover, nothing in the court's June 20, 2013, order diverges from the Ninth

15  Circuit's ruling.  As the Ninth Circuit's memorandum decision clarifies, AFM's

16  remaining claim arises out of LTK's alleged negligent conduct in the 2001/2002

17  timeframe.  (9th Cir. Op. II at 3.)  Depending on the development of evidence at trial or

18  otherwise, AFM's claim with respect to LTK's alleged negligence during that time period

19  may involve the design and installation of the terminal board and LTK's alleged failure to

20  change the bonded grounding system back to a floating design in conjunction therewith.

21  Whether AFM's negligence claim involving LTK's alleged conduct and failures in 2001

22  and 2002 is time-barred is reserved for trial.  However, as the Ninth Circuit has held,

ORDER- 8

1  AFM's claim based on LTK's alleged negligence in originally changing the Seattle

2  Monorail System from a floating to a bonded grounding system in 1998 is time-barred.

3  Nothing in the court's June 20, 2013 order is at odds with the Ninth Circuit's May 22,

4  2013 memorandum decision, nor does the court's June 20, 2013 order demonstrate any

5  bias—let alone "deep-seated favoritism or antagonism"—with respect to the parties in

6  this proceeding.  *See Liteky*, 510 U.S. at 555.

7  ### IV.   CONCLUSION

8  Based on the foregoing, the court declines to voluntarily recuse itself, and

9  DENIES AFM's motion for recusal (Dkt. # 140).  In accord with Local Rule LCR 3(e),

10  the court DIRECTS the clerk of court to refer this motion to the Chief Judge of the

11  Western District of Washington.  *See* Local Rules W.D. Wash. LCR 3(e).

12  Dated this 26th day of June, 2013.

13

14

15  _____
   JAMES L. ROBART
16  United States District Judge

17

18

19

20

21

22

ORDER- 9