1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

AFFILIATED FM INSURANCE CO.,

CASE NO. C06-1750JLR

11

Plaintiff,

ORDER REGARDING
PLAINTIFF'S *DAUBERT* AND
SUMMARY JUDGMENT
MOTIONS

12

v.

13

LTK CONSULTING SERVICES,
INC.,

14

Defendant.

15

## I.      INTRODUCTION

16

17      Before the court are two motions by Plaintiff Affiliated FM Insurance Co.

18      ("AFM"):  (1) AFM's motion to exclude the testimony of Defendant LTK Consulting

19      Services, Inc.'s ("LTK") expert witness, Dr. Lloyd McSparran (Dkt. # 168), and (2)

20      AFM's motion for partial summary judgment (Dkt. # 171).  In its motion to exclude,

21      AFM specifically asks the court to exclude testimony from Dr. McSparran relating to (1)

22      the origin and cause of the subject fire, and (2) whether AFM's insured, the Seattle

1  Monorail System ("SMS"), was comparatively negligent for failing to perform an

2  electrical protection coordination study and failing to set the protection relays at

3  appropriate levels.  (*See generally* Mot. (Dkt. # 168).)  In its motion for partial summary

4  judgment, AFM asserts that if the court grants its motion to exclude the foregoing aspects

5  of Mr. McSparran's testimony, then the conclusions of AFM's expert witness, Kevin

6  Lewis, concerning the origin and cause of the fire involving the Blue Train of the Seattle

7  Monorail on May 31, 2004, will be uncontested at the time of trial.  (SJ Mot. (Dkt. # 171)

8  at 2-3.)  Accordingly, AFM also asks the court to enter an order on partial summary

9  judgment reflecting this fact.  (*Id.* at 3.)  The court has reviewed both of AFM's motions,

10 all submissions filed in support of or opposition thereto, the balance of the record, and the

11 applicable law.  In addition, the court conducted a hearing on April 15, 2014, during

12 which it heard testimony and argument related to these two motions.  Begin fully advised,

13 the court DENIES both motions.

14                              **II.    BACKGROUND**

15        This action arises out of a fire that occurred on May 31, 2004, and damaged the

16 Blue and Red Trains of Seattle Monorail as the Blue Train was leaving the Seattle Center

17 Station.  (*See* Not. of Rem. (Dkt. # 1) at 7 (Compl. ¶¶ 1.1, 3.2).)  AFM paid its insured

18 SMS $3,267,861.00 for damages resulting from the fire.  (*Id.* ¶ 5.1.)  AFM, as the

19 subrogee of SMS, brings this action against LTK, which is an engineering firm that

20 conducted work with respect to the Monorail. (*Id.*)

21        LTK has designated Dr. McSparran as one of its expert witnesses in this matter,

22 and he has issued three separate reports containing a number of opinions.  (McSparran

1   Decl. (Dkt. # 182) ¶¶ 2-5.)  Dr. McSparran has eight years of formal engineering

2   education, including a bachelors, a masters and a doctoral degree in electrical

3   engineering.  (McSparran Decl. (Dkt. # 182) ¶¶ 6-7.)  In addition to his education, he has

4   38 years of engineering work experience.  (*Id.* ¶ 8.)  Thirty of his thirty-eight years of

5   experience have been in a management capacity directly supervising the provision of

6   electrical engineering design services such as those at issue in this case.  (*Id.*)  More

7   specifically, the vast majority of Dr. McSparran's work experience has related to

8   electrical and propulsion systems in mass transit vehicles, and a significant amount of his

9   work was spent on grounding systems (both "floating" and "grounded") for mass transit

10  vehicles.  (*Id.* ¶¶ 8, 22.)  Dr. McSparran spent fourteen years working in systems

11  engineering and systems engineering management.  (*Id.* ¶ 13.)  During this time, his work

12  specifically included the design and electrical configuration of grounding systems for

13  transportation vehicles.  (*Id.*)  As such, Dr. McSparran developed an understanding of the

14  relevant aspects of both "floating" and "grounded" grounding systems as they pertain to

15  safety—all of which he gained prior to his work on this litigation.  (*Id.* ¶ 8.)

16          An understanding of different grounding methodologies—including how they

17  relate to other aspects of the overall transportation system, and the benefits and

18  detriments of each grounding methodology—was a fundamental basis for much of Dr.

19  McSparran's professional work.  (*Id.* ¶ 22.)  For example, his first professional

20  assignments involved working with the grounding systems of mass transit systems,

21  required knowledge and a thorough understanding of grounding methodologies, and

22  provided the foundation for his opinions as to the safety of "grounded" vehicle chassis.

1  (*Id.* ¶¶ 18-19.)  During these early experiences, he recognized that both "grounded" and

2  "floating" systems had the potential for arcing and fires.  (*Id.* ¶ 18.)

3         AFM moves to exclude Dr. McSparran's testimony in two specific areas:  (1) the

4  origin and cause of the fire on May 31, 2004, and (2) SMS's alleged comparative fault

5  with respect to the fire.  (Mot. at 1.)  With respect to the origin and cause of the fire,

6  AFM has designated Mr. Kevin Lewis as one of its expert witnesses regarding this

7  subject matter.  Mr. Lewis has opined that "[i]f the protective shroud had not been

8  negatively bonded to the aluminum skin of the Blue Train's car body, the electrical arc

9  responsible for starting the fire would not have occurred and no ignition of combustible

10  materials inside Bogie compartment # 3 would have taken place on May 31, 2004."  (*See*

11  SJ Mot. at 2-3.)  In response, Dr. McSparran issued several opinions in his supplemental

12  expert report challenging Mr. Lewis's testimony.  (*See* McSparran Decl. Ex. B at 12.)

13  AFM argues that Dr. McSparran's opinions are excludable because he did not follow the

14  methodology for investigating fires set forth by the National Fire Protection Association

15  ("NFPA") in its NFPA 921 publication, entitled *Guide for Fire and Explosion*

16  *Investigations*.  (*See* Mot. at 5-7.)  In addition, AFM also argues that Dr. McSparran's

17  opinions regarding the origin of the fire are merely speculative based on certain portions

18  of his deposition testimony.  (*Id.* at 7.)

19         With respect to SMS's alleged comparative fault, Dr. McSparran has opined that

20  (1) SMS was negligent in failing to carry out a comprehensive circuit breaker protection

21  coordination study for the Seattle Center power substation prior to the May 31, 2004, fire

22  for the purpose of determining the levels at which the electrical protection relays should

1   be set, and (2) SMS acted in a reckless manner with deliberate indifference in

2   establishing the settings for the Monorail substations.  (*See* McSparran Decl. Ex. A at 3-

3   5.)  AFM argues that this portion of Dr. McSparran's testimony is not based on "any

4   electrical code, industry standard or contractual requirement," or supported by other

5   evidence.  (Mot. at 9-10.)  AFM also asserts that Dr. McSparran's opinion concerning

6   SMS's comparative fault does not grow out of research conducted independently of the

7   litigation, but rather was developed solely for purposes of testifying here.  (Mot. at 10-

8   11.)  As such, AFM argues that Dr. McSparran must demonstrate that his "testimony is

9   the product of reliable principles and methods," rather than simply his own *ipse dixit* (i.e.

10  "say so"), and that he has failed to do so.  (*Id.*)[1]

11      Finally, AFM has moved for partial summary judgment arguing that if the court

12  grants AFM's motion to exclude the challenged portions of Dr. McSparran's testimony

13  above, then certain aspects of Mr. Lewis's testimony will go unchallenged and therefore

---

15  [1] In its reply memorandum, AFM argues for the first time that Dr. McSparran's testimony
16  should be excluded in total, and not simply with respect to the two topics identified in its opening
    motion and memorandum.  (*See* Reply (Dkt. # 186) at 9 ("For all the reasons identified above,
    Dr. McSparran should be prevented from testifying as an expert witness at trial.").)  In addition,
17  AFM argues new bases for excluding Dr. McSparran's testimony that it neglected to raise in its
    opening memorandum.  (*See, e.g.*, *id.* at 6 (arguing for the first time that Dr. McSparran's
    testimony should be excluded because he failed to address American Public Transit Association
18  ("APTA") standard PR-E-RP-002-98); 8 (arguing for the first time that Dr. McSparran's
    testimony that SMS was negligent in failing to remove grease from underneath a portion of the
19  Monorail should be excluded); 9 (arguing for the first time that Dr. McSparran's testimony
    concerning the failure of the low speed drive shaft should be excluded).  The court, however,
20  declines to consider arguments raised for the first time in reply.  *See Coos Cnty. v. Kempthorne*,
    531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first
21  time in a reply brief); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("We do not consider
    arguments raised for the first time in the reply brief.").

1  these "conclusions" by Mr. Lewis should be "considered uncontested facts at trial."  (SJ

2  Mot. at 3.)  LTK counters that it demonstrates a sufficient basis for Dr. McSparran's

3  testimony so that it is not excludable, and that in any event, other witnesses, whose

4  testimony AFM has not challenged, also counter Mr. Lewis's testimony concerning the

5  source and cause of the fire thereby rendering summary judgment with respect to Mr.

6  Lewis's conclusions inappropriate.  (*See generally* SJ Resp. (Dkt. # 190).)  The court

7  considers all of these issues below.

8  ### III.    ANALYSIS

9  ### A.  AFM's Motion to Exclude Portions of Dr. McSparran's Testimony

10      Rule 702 of the Federal Rules of Evidence governs the admission of expert

11  testimony in federal court:

12      A witness who is qualified as an expert by knowledge, skill, experience,
    training, or education may testify in the form of an opinion or otherwise if:
13      (a) the expert's scientific, technical, or other specialized knowledge will
    help the trier of fact to understand the evidence or to determine a fact in
14      issue; (b) the testimony is based on sufficient facts or data; (c) the
    testimony is the product of reliable principles and methods; and (d) the
15      expert has reliably applied the principles and methods to the facts of the
    case.

16  

17  Fed. R. Evid. 702.  "Rule 702 . . . require[s] that '[e]xpert testimony . . . be both relevant

    and reliable.'" *Estate of Henry Barbain v. Astenjohnson, Inc.*, 740 F.3d 457, 463 (9th Cir.
18  
    2014) (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001)).
19  
        "Relevancy simply requires that '[t]he evidence . . . logically advance a material
20  
    aspect of the party's case.'" *Id.* (quoting *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir.
21  
    2007)).  Reliability requires the court to assess "whether an expert's testimony has 'a
22

1  reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* (quoting

2  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (citation and alterations

3  omitted)).  The court is concerned not with the correctness of the expert's conclusions but

4  the soundness of the methodology.  *Id.*  The court must act as a gatekeeper to exclude

5  "junk science" that does not meet Rule 702's reliability standards.  *Id.*  (quoting *Ellis v.*

6  *Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)).

7         The Supreme Court has clarified that the reliability standard is "a flexible one."

8  *Kumho Tire*, 526 U.S. at 150.  The Court has suggested several factors that can be used to

9  determine reliability:  (1) whether a theory or technique can be tested; (2) whether it has

10  been subjected to peer review and publication; (3) the known or potential error rate of the

11  theory or technique; and (4) whether the theory or technique enjoys general acceptance

12  within the relevant scientific community.  *Estate of Henry Barbain*, 740 F.3d at 463

13  (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-94 (1993)).  However,

14  whether these specific factors are "reasonable measures of reliability in a particular case

15  is a matter that the law grants the trial judge broad latitude to determine."  *Id.* (citing

16  *Kumho Tire*, 526 U.S. at 153).

17         The court notes that AFM has not challenged Dr. McSparran's testimony based on

18  the relevancy prong of Rule 702.  (*See generally* Mot.)  In any event, based on its review

19  of the parties' written submissions and the testimony presented at the April 15, 2014,

20  hearing, the court finds that Dr. McSparran's testimony is relevant and (if found to be

21  reliable) may assist the trier of fact.  Thus, the only issue before the court regarding the

22  admissibility of Dr. McSparran's testimony is its reliability under Rule 702.

**1.   Dr. McSparran's Testimony Related to the Origin and Cause of the Fire**

AFM's first challenge to Dr. McSparran's testimony is that in rendering his opinions concerning the cause of the May 31, 2004, fire on the Monorail, Dr. McSparran did not rely upon the methodology outlined in NFPA 921.  (Mot. at 5-6.)  AFM asserts that "[t]he relevant scientific community in this case is the fire science and fire investigation community" and not the electrical engineering expertise offered by Dr. McSparran.  (*See* Reply (Dkt. # 186) at 2-3.)

AFM is correct that numerous courts have found NFPA 921 to be an acceptable guide for fire investigation methodology.  *See Schlesinger v. United States*, 898 F. Supp. 2d 489, 504 (E.D.N.Y. 2012) (collecting cases); *Russ v. Safeco Ins. Co.*, No. 2:11cv195-KS-MTP, 2013 WL 1310501, at *24 (S.D. Miss. Mar. 26, 2013) (collecting cases). Moreover, courts have often excluded expert testimony that fails to comport with NFPA 921 standards when the expert witness explicitly references the guide in reaching his or her conclusions.  *See Russell v. Whirlpool Corp.*, 702 F.3d 450, 455 (8th Cir. 2012); *Schlesinger*, 898 F. Supp. 2d at 504 (collecting cases).  However, it is also true that "an expert's reliance on a methodology other than NFPA 921 does not render his opinions per se unreliable."  *Russ,* 2013 WL 1310501, at *24; *see Russell*, 702 F.3d at 455 ("We have held NFPA 921 qualifies as a reliable method endorsed by a professional organization, . . . but we have not held NFPA 921 is the *only* reliable way to investigate a fire.") (italics in original; citations omitted); s*ee also Schlesinger*, 898 F. Supp. 2d at 504 ("[T]he Court is aware of no court in this circuit that has refused to admit expert

1  testimony in an arson case because his or her opinion was based on a methodology other

2  than that prescribed in NFPA 921.").

3      Dr. McSparran does not purport to rely upon NFPA 921 for his analysis.  Instead,

4  he relies upon his educational and professional experience and his training in

5  methodologies such as failure mode and effects analysis ("FMEA") and systems

6  engineering.  (McSparran Decl. ¶¶ 12-14.)  Specifically, Dr. McSparran relied on his

7  FMEA training and also developed his own FMEA in order to critique AFM's expert's

8  FMEA as over-simplified.  (*Id.* ¶ 12.)  He also testified that analyzing the fire that is the

9  subject of this case requires a systems engineering approach—looking at the Monorail

10  system as a whole, rather than an isolated component—and that systems engineering and

11  systems engineering management is the type of work he performed for fourteen years of

12  his professional experience as an electrical engineer.  (*Id.* ¶¶ 13-14.)  Finally, Dr.

13  McSparran testifies that his opinions are further underpinned by industry standards set

14  forth by organizations with which he is has been actively involved, including the Institute

15  of Electrical and Electonic Engineers ("IEEE") and American Public Transportation

16  Association ("APTA").  (*Id.* ¶ 21, Ex. A at 10-11, n.8.)

17      Although AFM complains that Dr. McSparran did not employ the methodology

18  prescribed in NFPA 921, AFM's argument assumes that employing such a methodology

19  is prerequisite to the opinions Dr. McSparran has proposed regarding whether the

20  configuration of the grounding system of SMS played a role in causing the fire at issue.

21  The case law cited above does not support this position.  Further, the court has been given

22  no reason to believe that an individual with the extensive educational background Dr.

1   McSparran has described, coupled with thirty-eight years of professional experience in

2   specific fields of particular relevance here, and employing the methodology described

3   above, should be excluded from testifying about the grounding system of the SMS and

4   the role, if any, that it played in causing the fire.  AFM is correct that an expert must

5   utilize a reliable methodology.  The court, however, concludes that Dr. McSparran's

6   application of his expertise as an electrical engineer (in specific areas particularly

7   relevant to this case) to his review of the evidence, other expert reports, and testimony in

8   this matter, along with his use of FMEA and systems engineering analysis and reference

9   to industry standards, constitutes a reliable methodology with respect to his opinions

10  herein.

11      AFM also moves to exclude Dr. McSparran's testimony concerning the cause of

12  the fire as "speculation" based on a portion of his deposition testimony which AFM

13  characterizes as an "admission [that he has] nothing to offer but speculation with regard

14  to the origin of the fire."  (Mot. at 7.)  Having reviewed the cited portions of Dr.

15  McSparran's testimony, however, the court agrees with LTK that "[t]he testimony cited

16  addresses the location where the fire started," as well as the materials first ignited, and

17  "has absolutely nothing to do with any opinions as to whether the configuration of the

18  grounding system played any role in causing the fire."  (Resp. (Dkt. # 181) at 7.)  The

19  court agrees with LTK that AFM's argument conflates the idea of the origin of the fire or

20  the location where flames first burst forth with the concept of the underlying cause of the

21  fire.  It is the later concept to which Dr. McSparran directs his expert testimony and not

22  the former.  The fact that Dr. McSparran does not profess to be an expert with respect to

where the fire first started does not render his testimony concerning the underlying cause of the fire to be speculative.

Finally, the court notes that numerous other courts have admitted the testimony of electrical engineering expert witnesses with respect to the underlying cause of a fire where the fire at issue allegedly bears a relationship to this area of expertise. *See, e.g.*, *Maryland Cas. Co. v. Therm-o-disc, Inc.*, 137 F.3d 780, 785-86 (4th Cir. 1988) (affirming district court's denial of *Daubert* challenge and admission of testimony of electrical engineering expert that fire in clothes dryer was caused by malfunction in thermometer); *Argonaut Ins. Co. v. Samsung Heavy Indus. Co. Ltd.*, 929 F. Supp. 2d 159, 168-69 (N.D.N.Y. 2013) (denying *Daubert* challenge and admitting testimony of electrical engineering expert on cause and origin of fire which allegedly started when a truck's battery cable ground faulted and caused an arcing event); *Pekarek v. Sunbeam Prods., Inc.*, 672 F. Supp. 2d 1161, 1169-70 (D. Kan. 2008) (denying *Daubert* challenge and admitting testimony of electrical engineering expert as to source and cause of fire allegedly related to electric blanket where he "applied principles of electrical engineering to either eliminate or identify particular failure that could have started the fire"); *Windham v. Circuit City Stores, Inc.*, 420 F. Supp. 2d 1206, 1212-13 (D. Kan. 2006) (denying *Daubert* challenge and admitting testimony of electrical engineering expert that range cordset caused kitchen fire); *Harrington v. Sunbeam Prod., Inc.*, No. 4:07-CV-1957 CAS, 2009 WL 701994, at *6-10 (denying *Daubert* challenge and admitting testimony of electrical engineering expert that fire could have originated from electrical arcing in the heating element of a blanket); *Quist v. Sunbeam Prod., Inc.*, No. 08-5261

1    (DWF/AJB), 2010 WL 1665254, at *6-7 (D. Minn. Apr. 22, 2010) (admitting testimony

2    of electrical engineering expert that heating pad and not extension cord was the cause of

3    the fire at issue); *Warford v. Indus. Power Sys., Inc.*, 553 F. Supp. 2d 28, 33-34 (D.N.H.

4    2008) (denying *Daubert* challenge and admitting testimony of operator of maritime

5    electrical service company regarding theories of causation and liability against designer

6    and builder of vessel's switchboard arising out of explosion and fire on vessel).  Based on

7    the foregoing analysis and legal authority, the court finds that Dr. McSparran's expert

8    testimony meets the reliability and relevancy standards of Rule 702, and DENIES AFM's

9    motion to exclude Dr. McSparran's opinions related to the cause of the fire.

10           **2.   Dr. McSparran's Testimony Related to the AFM's Alleged Contributory**
                   **Fault**

11

12           AFM also challenges Dr. McSparran's expert testimony as it relates to his

13   opinions that SMS was negligent in failing to carry out an electrical protection

14   coordination study prior to the fire for purposes of determining the levels at which the

15   electrical protection relays should be set and that SMS acted in a reckless manner in

16   establishing the settings for Monorail substations.  (Mot. at 8-11.)  "In general, expert

17   testimony is required when an essential element in the case is best established by an

18   opinion which is beyond the expertise of a layperson."  *Harris v. Groth*, 663 P.2d 113,

19   118 (Wash. 1983).   In Washington, "to establish the standard of care required of

20   professional practitioners, that standard must be established by the testimony of experts

21   who practice in the same field."  *McKee v. Am. Home Prods., Corp.*, 782 P.2d 1045, 1048

22   (Wash. 1989).  Thus, "the duty of physicians must be set by forth by a physician, the duty

1  of a structural engineer by a structural engineer and that of any expert must be proven by

2  one practicing in the same field by one's peer." *Id.* This same principle applies here.

3  The standard of care relative to LTK's affirmative defense and required to safely operate

4  the Monorail and properly maintain its grounding system "is beyond the expertise of a

5  layperson," and so LTK has offered the testimony of Dr. McSparran on this topic. The

6  court will not restate all of Dr. McSparran's qualifications, but as described above, Dr.

7  McSparran has eight years of formal engineering education and over thirty-eight years of

8  professional experience that is highly relevant to the issues presented by the fire in

9  controversy here. Nowhere does AFM challenge the depth or width of Dr. McSparran's

10  educational and professional experience in the relevant area of electrical engineering. In

11  any event, the court finds that Dr. McSparran is qualified to opine concerning the

12  standard of care required of an operator of the type of transportation system at issue here

13  with respect to maintenance of the electrical grounding system and more specifically with

14  regard to SMS's alleged failure to carry out an electrical protection coordination study

15  and establish proper settings for the Monorail substations.

16         Instead of attacking Dr. McSparran's qualifications, AFM asserts that his failure to

17  cite a specific "electrical code, industry standard or contractual requirement" requiring

18  SMS to perform an electrical protection coordination study renders his opinion on the

19  matter inadmissible. (Mot. at 6.) Although Dr. McSparran does not cite a specific

20  standard, he testifies generally that he "relied on various standards issued by APTA and

21  IEEE in forming [his] opinions in this case." (McSparran Decl. ¶ 21.) In any event, the

22  court agrees with LTK that AFM overstates the significance of industry standards here.

ORDER- 13

1   If there is evidence that a party has broken such a standard, then such evidence may be

2   relevant to or probative of negligence. *See Knappett v. King Cnty. Metro Transit*, No.

3   65801-8-I, 2012 WL 540555, at *5 (Wash. Ct. App. Feb. 21, 2012) (evidence of breach

4   of transit industry standard would augment Metro's common carrier duty to passengers,

5   but proof of such a standard is not required to demonstrate Metro's duty of care to its

6   passengers); *Kraft Reinsurnace Ireland, Ltd. v. Pallets Acquisitions, LLC*, 845 F. Supp.

7   2d 1342, 1353 (N.D. Ga. 2011) ("Evidence showing a violation of 'privately set

8   guidelines' for industry standards is admissible and probative of negligence, but does not

9   conclusively establish negligence or duty owed."); *see Ramos v. Simon-Ro Corp.*, No. 06-

10  CV-6105 (KMK), 2008 WL 4210487, at *10 (S.D.N.Y. Sept. 11, 2008) ("[W]hile

11  industry standards may provide relevant evidence in assessing the existence of a design

12  defect, industry standards are not dispositive.") (internal quotation marks omitted).

13  However, the fact that there is no written code or standard requiring a particular course of

14  conduct does not mean that the failure to engage in that course of conduct is not a breach

15  of the standard of care. *See Chandler v. Greenstone Ltd.*, No. C04-1300RSL, 2012 WL

16  882756, at *1 (W.D. Wash. Mar. 14, 2012) ("Plaintiff's experts acknowledge that there

17  are no regulations or industry standards that set forth the specific tests that must be

18  performed . . . .That does not, however, necessarily mean that defendants . . . were non-

19  negligent.").  If anything, Dr. McSparran's paucity of citation to industry standards in

20  rendering his opinion is an area that AFM may want to explore on cross-examination as a

21  part of the adversarial system, but in this instance it is not grounds for exclusion under

22  Rule 702 or *Daubert*.

1    AFM also challenges Dr. McSparran's opinions because he did not know when

2  Kinh Pham or George Swartz first formed their opinions that an electrical protection

3  coordination study should be performed and allegedly made those recommendations to

4  SMS.  (*See* Mot. at 9 (citing McSparran Dep. at 43:5-44:8 (attached as Ex. A to Pierson

5  Decl. (Dkt. # 170)).)  LTK asserts that whether Dr. McSparran knew the precise timing of

6  when these individuals formed such an opinion or made such a recommendation to SMS

7  is irrelevant because they "provided those opinions to SMS prior to the fire, and SMS

8  ignored those opinions . . . ."  (Resp. at 11-12.)  Again, although the timing of the

9  formation of these individuals' opinions may be an area for cross-examination, it is not a

10  basis for disqualifying Dr. McSparran's testimony.[2]

11    AFM also challenges Dr. McSparran's testimony because he relied in part on

12  William Aycock's post-fire correspondence, arguing that such reliance is not acceptable

---

14        [2] In its reply memorandum, AFM asserts that Dr. McSparran's testimony should be
15  excluded because he relies upon the conclusions of other experts and "is merely 'parroting'"
    their opinions rather than formulating his own.  (Reply at 7-8.)  The court agrees that one expert
16  may not simply "parrot the opinions" of another expert, but there is no absolute prohibition
    disallowing one expert witness from relying upon information or conclusions provided by
17  another expert in forming his or opinions.  *See e.g. Hunter v. Cnty. of Sacramento*, No. 2:06-cv-
    00457-GEB-EFB, 2013 WL 684649, at *2 (E.D. Cal. Feb. 22. 2013) (citing *Scott v. Ross*, 140
18  F.3d 1275, 1286 (9th Cir. 1998) (affirming district court's decision to permit expert testimony
    based in part on "collaboration with other academics")); *Matter of James Wilson Assoc.*, 965
19  F.2d 160, 172-73 (7th Cir. 1992) ( "The architect could use what the engineer told him to offer
    an opinion within the architect's domain of expertise, but he could not testify for the purpose of
20  vouching for the truth of what the engineer had told him—of becoming in short the engineer's
    spokesman."); *Villagomes v. Lab. Corp. of Am.*, No. 2:08-cv-00387-RLH-GWF, 2010 WL
21  4628085, at *4 (D.Nev. Nov. 8, 2010) ("A testifying expert may rely on the opinions of non-
    testifying experts as a foundation for the opinions within the testifying expert's field of expertise.
22  Rule 703, however, is not a license for an expert witness to simply parrot the opinions of non-
    testifying experts.").  The court is unconvinced that Dr. McSparran's reliance on information
    provided by other experts renders his opinion scientifically unreliable in this instance.

1   due to the doctrine of post-remedial measures.  (Mot. at 9 (citing *Gauthier v. AMF Corp.*,

2   788 F.2d 634, 636 (9th Cir. 1986).)  LTK asserts that such evidence is admissible under

3   Federal Rule of Evidence 407 which permits the introduction of post-remedial measures

4   when proffered to demonstrate feasibility.  (Resp. at 12 (citing Fed. R. Evid. 407).)  The

5   court need not resolve this dispute with respect to AFM's motion to exclude Dr.

6   McSparran's testimony because even if Mr. Aycock's post-fire correspondence is

7   otherwise inadmissible, Dr. McSparran's reliance upon it does not render his opinions

8   inadmissible.  "If experts in the particular field would rely on those kinds of facts or data

9   in forming opinion on the subject, they need not be admissible for the opinion to be

10  admitted."  Fed. R. Evid. 703.  Whether Mr. Aycock's post-fire correspondence itself is

11  admissible is not an issue that is presently squarely before the court or that has been

12  thoroughly briefed by the parties, and thus the court declines to make a ruling at this time.

13  Presently, the court simply finds that Dr. McSparran's reliance on Mr. Aycock's post-fire

14  correspondence alone does not render Dr. McSparran's opinion testimony inadmissible.

15          AFM asserts that Dr. McSparran's opinion testimony should be excluded because

16  he is unable "to point to any evidence to demonstrate SMS ever established what the

17  settings [for the Seattle Monorail Substantion] were supposed to be at any point in time"

18  or "what he believes the settings ought to have been."  (Mot. at 9-10.)  AFM misses the

19  point.  LTK does not offer Dr. McSparran's testimony to establish what the proper

20  settings were supposed to be.  Rather, LTK offers Dr. McSparran's testimony to establish

21  as part of its affirmative defense that SMS, as the operator of the Monorail, had a duty to

22  conduct an electrical protection coordination study in order to establish those settings

itself and that SMS breached that duty.  Although the fact that Dr. McSparran may have no opinion as to what the proper settings should be may be an area for cross examination, it is not a basis for excluding his testimony or finding it scientifically unreliable.

Finally, AFM asserts that Dr. McSparran's opinions should be excluded because "it would appear [they] were developed solely for purposes of litigation." (Mot. at 10 (citing *Metabolife Int'l v. Wornick*, 264 F.3d 832, 841 (9th Cir. 2001)).)  However, Dr. McSparran has specifically testified to the contrary:

> In my years of working with electrical and propulsion systems in mass transit and rail vehicles . . . , I became intimately familiar with the standard of care of an operator of these systems and measures that needed to be taken by such operators to ensure safe operation.  This included setting electrical protection relays.  All third rail power systems have substation relay systems and they all have industry standards applicable to them.  This is an issue that was prevalent throughout my work history.  Prior to ever being retained in connection with this matter, I already held the opinion that electrical protection relays must be set properly in order for the system to operate safely, and that the operator of a public mass transit transportation system has an absolute obligation to properly set those relays.

(McSparran Decl. ¶ 24.)  The court agrees with AFM that the Ninth Circuit has held that "whether [expert witnesses] have developed their opinions expressly for testifying" is a "very significant fact to be considered" in evaluating the admissibility of an expert witness's testimony. *Wornick*, 264 F.3d at 841.  Despite AFM's assertion that it "appear[s]" Dr. McSparran developed his opinion solely for purposes of this litigation (Mot. at 10), Dr. McSparran's sworn testimony shows that is simply not the case, and AFM has provided the court with no evidence to the contrary.

Overall, the court finds that Dr. McSparran's opinions are both relevant and reliable.  His opinions are based on his education, decades of professional experience in

ORDER- 17

1    relevant fields as described above, opinions he developed as a result of his experience

2    prior to his retention in this matter, his application of his education and experience to the

3    specific facts of this case, reference to standards issued by the APTA and IEEE, and his

4    review of discovery materials and other expert reports prepared in this litigation.  (*See*

5    *generally* McSparran Decl.)  As such, his opinions are not offered *ipsi dixit* to this court.

6    The fact that AFM's experts may disagree with his conclusions or use a different

7    methodology in reaching their conclusions is not grounds for exclusion of Dr.

8    McSparran's testimony.

9          As noted above, a trial judge has considerable leeway in deciding how to

10   determine whether expert testimony in a particular case is reliable.   *See Kuhmo Tire*, 526

11   U.S. at 153.  Thus, reliability analysis may focus upon personal knowledge or experience.

12   *See McKendall v. Crown Control. Corp.*, 122 F.3d 803, 807-08 (9th Cir. 1997) (expert

13   opinion based on expert's engineering experience and prior investigations is admissible

14   as helpful, relevant and reliable even when the expert had not created or tested the safety

15   device he opined would have prevented the accident), *overruled on other grounds by*

16   *Daubert*, 509 U.S. 579; *see also Maryland Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780,

17   782 (4th Cir. 1998) (affirming trial court's admission of expert testimony of electrical

18   engineer whose opinion was not based on tests but rather on examination of the

19   conditions inside the product and application of principles of electrical engineering to

20   those conditions); *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-cv-00204, 2013 WL

21   4052030, at *5 (N.D. Ill. Aug. 12, 2013) ("[Engineering expert] applies his previous

22   education and vast experience to give his expert opinion on whether [defendant's

1   product] was adequate from a mechanical engineering point of view, thereby aiding the

2   fact-finder in determining the ultimate question of willfulness.").  AFM's challenges go

3   to the weight of Dr. McSparran's testimony and not its admissibility under Rule 702 or

4   *Daubert*.  AFM's attorney is free to cross-examine Dr. McSparran regarding the accuracy

5   of and underpinnings for his opinions and present contrary evidence to the fact-finder.

6   *See Daubert*, 509 U.S. at 595.  At this juncture, however, the court finds that Dr.

7   McSparran's  proffered expert testimony meets the minimum reliability and relevancy

8   requirements of Rule 702.  The court DENIES AFM's motion to exclude Dr.

9   McSparran's based on Rule 702 or *Daubert*.

10          **B.  AFM's Motion for Summary Judgment**

11          In conjunction with its motion to exclude certain aspects of Dr. McSparran's

12   expert testimony, AFM also filed a three-page motion for partial summary judgment.

13   (*See generally* SJ Mot.)  AFM asserts that if the court grants its motion to exclude Dr.

14   McSparran's testimony concerning the cause and origin of the May 31, 2004 fire, then

15   LTK will not be able to dispute the conclusions of AFM's expert witness, Kevin Lewis,

16   concerning those same issues.  (*Id.* at 2-3.)  Mr. Lewis testifies that he has reached the

17   following conclusions:  (1) the origin of the fire was the undercarriage of the Blue Train

18   in Bogie compartment #3, (2) the source of ignition of the fire was an electrical arc that

19   occurred when a high speed drive shaft came into contact with a negatively bonded

20   protective shroud contacting the positive collector shoe and aluminum skin of the Blue

21   Train's car body in Bogie compartment #3, (3) the first combustibles ignited were the

22   rubber tires, lubrication grease and rubber expansion joint located in Bogie compartment

1   #3, and (4) if the protective shroud had not been negatively bonded to the aluminum skin

2   of the Blue Train's car body, the electrical arc responsible for starting the fire would not

3   have occurred and no ignition of the combustible materials inside Bogie compartment #3

4   would have taken place on May 31, 2004.  (SJ Mot. at 3-4 (citing Lewis Decl. (Dkt.

5   # 169) ¶¶ 7-8).)  Accordingly, AFM argues that the court should grant partial summary

6   judgment with respect to these expert conclusions by Mr. Lewis.  (*Id.* at 3.)

7        The court, however, has denied AFM's motion to exclude Dr. McSparran's

8   testimony, and thus, the court denies AFM's motion for partial summary judgment as

9   moot on this ground.  Nevertheless, even if the court had granted AFM's motion to

10  exclude, it would still not grant AFM's motion for partial summary judgment.  LTK has

11  persuaded the court that even if Dr. McSparran's testimony were disallowed, there is

12  other evidence that creates an issue of fact with respect to Mr. Lewis's conclusions, and

13  thus granting partial summary judgment in AFM's favor would not be appropriate in any

14  event.  (*See* SJ Resp. (Dkt. # 190) at 4-13.)  Accordingly, the court DENIES AFM's

15  motion for partial summary judgment.

16              **IV.    CONCLUSION**

17        Based on the foregoing, the court DENIES AFM's motion to exclude certain

18  //

19  //

20  //

21  //

22  //

1   aspects of Dr. McSparran's expert testimony (Dkt. # 168) and AFM's motion for partial

2   summary judgment (Dkt. # 171).

3          Dated this 16th day of April, 2014.

4

5

6          _____

7          JAMES L. ROBART
           United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 21